UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HELENE TOMASIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 5665 |
| | ) | |
| v. | ) | District Judge Elaine Bucklo |
| | ) | |
| C.D. PEACOCK, INC., and, | ) | Magistrate Judge Sidney I. Schenkier |
| JEWELCOR, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case arises out of a complaint filed on September 11, 2009, by plaintiff, Helene

Tomasian, against her former employers, defendants C.D. Peacock, Inc., and Jewelcor, Inc., alleging

sex discrimination, sexual harassment, national origin discrimination, religious discrimination,

violations of the Equal Pay Act, and retaliation (doc. # 1). On April 5, 2011, this case was referred

to this Court for the purpose of holding a settlement conference (doc. # 57). On May 19, 2011, on

plaintiff's motion (doc. # 65), the district judge then presiding in the case (the late Judge William

J. Hibbler) referred the parties' discovery disputes to this Court (doc. # 73).

Since that time, discovery has been ongoing – or, more aptly, "rough-going." In the last 13

months since the referral, the parties have filed the following disputed motions, most of which were

fully briefed by the parties: plaintiff's motion to compel (doc. # 62); plaintiff's motion to quash

(doc. # 67); defendants' motion to compel (doc. # 70); defendants' motion to compel (doc. # 104);

plaintiff's motion to quash subpoenas and for a protective order (doc. # 111); plaintiff's motion for

protective order (doc. # 115); defendants' motion to approve and adopt defendants' proposed non-

waiver Rule 502 "clawback" agreement (doc. # 124); defendants' motion to compel (doc. # 135);

plaintiff's motion for reconsideration of this Court's ruling on the parties' discovery motions (doc. # 143); plaintiff's motion to compel deposition (doc. # 157); defendants' motion to compel plaintiff's response to deposition questions regarding payment of sales tax (doc. # 159); plaintiff's motion to compel depositions (doc. # 162); plaintiff's motion to quash defendants' subpoenas and for protective order (doc. # 166); plaintiff's objection to defendants' billing statement and motion to reduce fees (doc. # 171); and plaintiff's motion to compel deposition of Carter Davies and for sanctions (doc. # 173). In addition, plaintiff sought "emergency" relief from the district court judge to stay this Court's order denying plaintiff's motion to quash defendants' subpoenas (doc. # 118), which was denied (doc. # 131).

Defendants now move to disqualify plaintiff's counsel, Keith L. Hunt, and for a protective order that would bar Pat Luciew, a former Human Resources Manager at C.D. Peacock, from testifying (doc. # 168). For the reasons that follow, the Court denies defendants' motion in its entirety.[1]

## I.

Defendants argue that this Court should grant their motion to disqualify and for a protective order with respect to Ms. Luciew because Mr. Hunt's contacts with her have "raise[d] concerns about the improper access to or use of privileged or confidential information by Plaintiff or her counsel during this litigation" (doc. # 196: Defs.' Reply at 12). In addressing this argument, we first provide a brief review of the facts relevant to defendants' motion.

---

[1]Defendants separately have moved for sanctions, including dismissal, based on plaintiff's alleged failure to preserve (or her active destruction of) documents (doc. #155). That motion will be addressed in due course in a separate opinion.

Plaintiff was employed by defendants from September 5, 1995 until February 27, 2008 (doc. # 1: Compl., ¶ 12). Ms. Luciew was C.D. Peacock's Human Resources Manager from November 3, 1993 to February 25, 2008, at which time defendants terminated Ms. Luciew's employment (doc. # 168: Defs.' Mot. at 2). When Ms. Luciew's employment ended, she signed a confidential separation agreement containing provisions stating that she will not disclose privileged and/or confidential information about defendants, and would not voluntarily participate in litigation against defendants (doc. # 168: Defs.' Mot. to Disqualify at 2-3).

As Human Resources Manager, Ms. Luciew addressed employee complaints, which sometimes involved privileged and confidential discussions with defendants' general counsel and outside counsel (Defs.' Mot. at 1-2). Plaintiff alleges that at times during her employment, she complained of discrimination and harassment at the hands of other employees to C.D. Peacock's Human Resources Department, which ignored her complaints (Compl., ¶¶ 19(m), 23(e-f), 27). Defendants contend that Ms. Luciew was personally involved with the investigation of these complaints (Defs.' Mot. at 2).

Mr. Hunt first spoke with Ms. Luciew in February and May 2010, after defendants moved to stay and compel arbitration, allegedly to inquire as to her availability to be deposed, as Ms. Luciew was defendants' only human resources employee at the time plaintiff was asked to sign the arbitration agreement (Pl.'s Resp. at 2-3, Ex. E (Luciew Dep.) at 59). At that time, Mr. Hunt informed Ms. Luciew that he represented plaintiff, but he stated that he would represent Ms. Luciew at the May 2010 deposition if defendants threatened her with a civil action or accused her of breaching her confidentiality agreement (Pl.'s Resp. at 3 (citing Ex. A (Luciew Decl.), ¶ 4)). Ms. Luciew and plaintiff agreed to this arrangement (*Id.*). During the May 13, 2010 deposition,

3

defendants' attorney questioned Ms. Luciew as to the extent of her communications with Mr. Hunt, and Mr. Hunt objected to that line of questioning (Pl.'s Resp. at 2-3, Ex. E (Luciew Dep.) at 60-65). Ms. Luciew testified that she and Mr. Hunt discussed whether Ms. Luciew had been deposed before and whether she had heard from anyone at C.D. Peacock before or after receiving the subpoena for her deposition (*Id.* at 59-63).

The parties spar over whether Mr. Hunt represented Ms. Luciew during that deposition in 2010. Mr. Hunt says that he did so for the purpose of protecting Ms. Luciew's interests in the event defendants sought to claim that Ms. Luciew had violated her separation agreement (Pl.'s Resp. at 3-4), but defendants disagree that there was any representation at that time (Defs.' Reply at 6-7). The answer to the question of whether Mr. Hunt represented Ms. Luciew during the 2010 deposition is obscured by the antagonistic conduct of the lawyers during the deposition (Mr. Hunt for plaintiff and Amanda Helm Wright for defendants), which suggests that they were more interested in unprofessional exchanges than in obtaining necessary information (Pl.'s Resp., Ex. E (Luciew Dep.) at 63-68)).

Ms. Luciew's declaration says that she understood Mr. Hunt represented her at the deposition not generally, but only to the extent there was an effort by defendants to establish that she was in violation of the separation agreement (Pl.'s Resp., Ex. A (Luciew Decl.), ¶ 4).[2] Ms. Luciew says that

---

[2]We note that the original Luciew declaration, filed with the response on April 13, 2012, was signed electronically, undated, and did not use the precise language set forth in 28 U.S.C. § 1746. Plaintiff later filed a revised declaration with an original signature, but otherwise unchanged (doc. # 187). In their reply, defendants seize on the lack of the date in asking us to strike the declaration in its entirety (Defs.' Reply at 16-17). Thereafter, on May 25, 2012, plaintiff submitted a third iteration of the Luciew declaration, this one with an original signature and a date (April 12, 2012) (doc. # 200). After three efforts, this most recent declaration still does not track the plain and simple language of Section 1746, which says that the declarant shall sign and date under the following legend: "I declare under penalty of perjury that the foregoing is true and correct." Ms. Luciew, by contrast, has signed under the legend that adds the following highlighted language to the Section 1746 formulation: "I declare under penalty of perjury **and the other penalties imposed by 28 U.S.C. § 1746** that the foregoing statements are true and correct **to the best of my knowledge**" (emphasis added). The first highlighted addition is surplusage that neither adds to nor detracts from the attestation. We

4

she felt this agreement on representation was invoked by the questioning of defense counsel that began at page 61 of the deposition (*Id.*, ¶ 5). However, Mr. Hunt did not announce at the outset of the deposition that he would represent Ms. Luciew if the deposition veered off into that direction. Nor did he announce that he was representing her with the questioning that began at page 61. To the contrary, he told defense counsel that if she was trying to establish that Ms. Luciew had breached the agreement, "then have the professional courtesy to the witness to be upfront, tell her that is what you believe, *give her an opportunity to get counsel . . .*" (Pl.'s Resp., Ex. E (Luciew Dep.) at 63 (emphasis added)). The statement that Ms. Luciew would need an "opportunity to get counsel" to deal with such an allegation does not suggest that Ms. Luciew already had counsel who would represent her sitting right beside her.

Following Mr. Hunt's statement, defense counsel asked whether Mr. Hunt represented Ms. Luciew at the deposition, but did not wait for an answer before continuing on with colloquy (Pl.'s Resp, Ex. E (Luciew Dep.) at 63-64). That said, we find unpersuasive Mr. Hunt's assertion that defense counsel cut him off before he could answer; our observation of Mr. Hunt during the many discovery dust ups that have characterized this case is that he is no shrinking violet who would be cowed into silence by being cut off. Nor do we consider credible Mr. Hunt's suggestion that he "forgot" to state on the record something so important as the fact (if it was a fact) that he was representing Ms. Luciew. On the record before this Court, we find that while Ms. Luciew may have thought Mr. Hunt would represent her in the event certain questioning arose, neither she nor Mr. Hunt did anything to put defendants on notice of that representation either prior to or during the

---

are less sure about the last addition, which might be read as a hedge on the certainty of the matters to which Ms. Luciew attests. Regardless, as her declaration is made under penalty of perjury, and defendants did not raise the additional language as a basis to strike the motion, we will not use this deviation as a basis for striking the declaration.

Luciew deposition in 2010. Nor was there any good reason for Mr. Hunt to have informed defendants of any such representation. To the extent that Mr. Hunt argues that defendants waived any objection to his representation of Ms. Luciew in 2012 because they knew about an earlier representation in 2010 and did not object, that argument fails.

After the conclusion of this deposition, it appears that the next interaction between Mr. Hunt and Ms. Luciew occurred some 21 months later, in February 2012. On February 15, 2012, Mr. Hunt provided defendants' counsel with a list of nine witnesses he wished to depose in this lawsuit, which included Ms. Luciew (Defs.' Mot., Ex. A). On February 23, 2012, Mr. Hunt issued a notice for her deposition (*Id.*, Ex. C). Six days later, on February 29, 2012, Mr. Hunt advised defendants' counsel that he "represent[ed] Pat Luciew and she is available on the date in the Notice" (*Id.*, Ex. D).

Soon thereafter, on March 5, 2012, defense counsel sent Mr. Hunt a letter stating that they "have very serious concerns regarding the propriety of [his] representation of Ms. Luciew, who may have been involved in privileged discussions with in-house counsel and senior management at C.D. Peacock during her tenure with the company" (Defs.' Mot., Ex. E). In addition, defense counsel noted that Ms. Luciew is subject to a non-disclosure agreement (*Id.*). On March 8, 2012, defense counsel sent another letter to Mr. Hunt contending that his dual representation of plaintiff and Ms. Luciew would violate ABA Model Rule 4.2, Comment 7, and Canons 5 and 9 of the ABA Model Code of Professional Responsibility because of Ms. Luciew's position at C.D. Peacock and her dealings with company counsel regarding internal employee complaints, including those of plaintiff (Defs.' Mot., Ex. F).

Mr. Hunt did not respond to defense counsel's letters, and defendants' motion to disqualify him as counsel and for a protective order followed on March 13, 2012. At the time they filed the

motion, defendants believed that Mr. Hunt had continued to represent Ms. Luciew since February 29, 2012 (Defs.' Mot. at 4). In her declaration (filed April 13, 2012), Ms. Luciew represents (and Mr. Hunt confirms) that Mr. Hunt informed Ms. Luciew that he no longer would represent her in light of defendants' motion to disqualify (Pl.'s Resp. at 4, Pl.'s Ex. A (Luciew Decl.), ¶ 11). Ms. Luciew now is represented by George Grumley, an attorney at the law firm of Grumley, Kamin and Rosic, LLC (Pl.'s Resp. at 16).

## II.

Before we reach the merits of defendants' arguments, we address two preliminary issues that plaintiff raises.

### A.

For the first time, plaintiff argues that the currently pending motion should be heard by the district judge rather than this Court. Plaintiff argues that the motion to disqualify goes beyond the scope of the referral, because the referral order does not embrace all "non-dispositive" matters (Pl.'s Resp. at 5). This argument is inconsistent with plaintiff's earlier recognition that this Court would rule on the motions, expressed – without objection – both to opposing counsel in a March 21, 2012 email and to Judge Bucklo (the district judge now presiding in the case) during an April 19, 2012 status hearing (*see* Defs.' Reply, Ex. D and Ex. E (04/09/12 Tr.) at 3). It also ignores Judge Bucklo's statement that this Court would handle the motion (*Id.*, Ex. E (04/09/12 Tr.) at 5-6).

In any event, plaintiff's argument that the scope of the original referral is insufficient to authorize this Court to rule on the disqualification motion has been resolved by a supplemental referral order issued by Judge Bucklo referring all non-dispositive pretrial matters to this Court (doc.

# 202). Thus, we reject plaintiff's request that we strike the motion or, in the alternative, transfer it to Judge Bucklo (Pl.'s Resp. at 6).[3]

**B.**

Plaintiff also argues that defendants do not have standing to move for Mr. Hunt's disqualification because the concern that there is a conflict of interest between Mr. Hunt's representation of both plaintiff and Ms. Luciew may only properly be raised by those individuals, whom the ethical rules were designed to protect (Pl.'s Resp. at 6). Plaintiff is correct that, in general, the proper party to bring a motion to disqualify counsel based on a conflict of interest is that attorney's client or former client. *See Perkins v. Cook County*, No. 09 C 4930, 2010 WL 747570, at *2 (N.D. Ill. Mar. 2, 2010). However, a party may have standing to bring a motion to disqualify the opposing party's attorney if he or she can show that the opposing counsel's representation has personally harmed or injured him or her in some way. *Schneider v. County of Will*, 123 Fed. Appx. 715, 716-17 (7th Cir. 2005).

In this case, as explained above, defendants bring the motion to disqualify, at least in part, on the basis that Mr. Hunt may have obtained defendants' confidential or privileged information through his contact with – and representation of – Ms. Luciew (Defs.' Reply at 11). Defendants contend that Mr. Hunt might improperly use this information in this litigation. This adequately

---

[3]In so doing, we likewise reject defendants' characterization of plaintiff's argument as "a thinly-veiled attempt to have a judge less familiar with [plaintiff's counsel's] antics in this case address the substance of Defendants' motion with the hope of receiving a more favorable ruling" (Defs.' Reply at 5-6). There is nothing about this motion that requires the judge who decides it to have hands-on knowledge of the parties' numerous discovery battles. Defendants' suggestion that the outcome of their motion would turn on whether this Court or Judge Bucklo decides it does nothing to assist the Court in addressing the merits of the motion.

alleges a risk of injury personal to defendants that gives them standing to bring the instant disqualification motion.[4]

## III.

Disqualification of an attorney is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993). This is because disqualification of counsel, while protecting the attorney-client relationship, deprives a party of the representation of their choosing. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). Courts must carefully balance "the sacrosanct privacy of the attorney-client relationship" with "the prerogative of a party to proceed with counsel of its choice." *Black Rush Min., LLC v. Black Panther Min.*, -- F. Supp. 2d --, 2012 WL 104925, at *4 (N.D. Ill. Jan. 11, 2012) (citing *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)). A motion to disqualify counsel may sometimes be legitimate and necessary, but "such motions should be viewed with extreme caution for they can be misused as techniques of harassment." *Mercury Vapor Processing Tech., Inc. v. Vill. of Riverdale*, 545 F. Supp. 2d 783, 787 (N.D. Ill. 2008) (quoting *Freeman*, 689 F.2d at 722). "The moving party bears a heavy burden of proving facts required for disqualification." *RMB Fasteners, Ltd. v. Heads & Threads Int'l, LLC*, No. 11 C 2071, 2012 WL 245124, at *1 (N.D. Ill. Jan. 25, 2012).

---

[4]In their motion, defendants also argue more broadly that Mr. Hunt should be disqualified for representing both Ms. Luciew and plaintiff because they have "inconsistent, conflicting, or diverse" interests (Defs.' Mot. at 10). However, in their reply, defendants concede that any purported conflict between plaintiff and Ms. Luciew does not form the basis for defendants' motion (Defs.' Reply at 11). Regardless, clients jointly represented by an attorney may waive potential conflicts of interest, and here, Ms. Luciew's affidavit and Mr. Hunt's brief indicate that both Ms. Luciew and plaintiff agreed to the dual representation. *See U.S. v. Cellini*, 596 F. Supp. 2d 1194, 1196 (N.D. Ill. 2009) (counsel may proceed in face of conflict of interest "if all clients who are the source of the conflicts waive the rights they have to preclude conduct that violates the conflict rules").

Defendants argue that disqualification of Mr. Hunt is warranted here because Mr. Hunt's conduct violated the rules of professional conduct, specifically, Northern District of Illinois Local Rules 83.53.3(a)(1); 83.53.3(a)(8), 83.54.2; ABA Model Rule 4.2, and ABA Model Code of Professional Responsibility Canons 5 and 9 (Def.'s Reply at 15). As an initial matter, we note that Local Rules 83.50.1 through 83.58.4 were repealed in their entirety on June 2, 2011 by Northern District of Illinois General Order 11-0019. These rules were replaced by Local Rule 83.50, which adopts the American Bar Association's Model Rules of Professional Conduct ("ABA Model Rules"). Local Rule 83.50 states that:

> Applicable disciplinary rules are the Model Rules adopted by the American Bar Association. On any matter not addressed by the ABA Model Rules or for which the ABA Model Rules are inconsistent with the Rules of Professional Conduct in the state in which the lawyer's principal office is located, any lawyer admitted to practice in Illinois is governed by the Illinois Rules of Professional Conduct; any lawyer not admitted to practice in Illinois is bound by the Rules of Professional Conduct for that state in which the lawyer's principal office is located.

L.R. 83.50. Cases preceding this amendment are nevertheless relevant, as the former Northern District of Illinois Local Rules of Professional Conduct were patterned after the ABA Model Rules of Professional Conduct. *See Andrew Corp. v. Beverly Mfg. Co.*, 415 F. Supp. 2d 919, 926 (N.D. Ill. 2006). Furthermore, we note that courts in this Circuit embrace the language of the committee notes. *O'Malley v. Novoselsky*, Nos. 10 C 8200, 11 C 110, 2011 WL 2470325, at *2 n.2 (N.D. Ill. June 14, 2011) (citing *Rudzinski v. Metro. Life Ins. Co.*, No. 05 C 0474, 2007 WL 3171338, at *4 (N.D. Ill. Oct. 25, 2007)).

## A.

Defendants contend that Mr. Hunt has violated Model Rule 4.2 by agreeing to represent Ms. Luciew, and even absent representation, by having *ex parte* discussions with her (Defs.' Mot. at 8-9).

In considering defendants' argument, we begin by examining the language of that rule, which

defendants cite but never quote. Model Rule 4.2, entitled "Communication With Person Represented

By Counsel," states that: "In representing a client, a lawyer shall not communicate about the subject

of the representation with a person the lawyer knows to be represented by another lawyer in the

matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a

court order." ABA Model Rule 4.2.

Defendants' argument finds no footing in the plain language of the rule itself, which

addresses communications by a lawyer with represented parties. Ms. Luciew was no longer

employed with defendants at the time of Mr. Hunt's contact with her, and thus defense counsel

cannot – and do not – argue that they represented her merely because they represent defendants. Nor

do defendants assert that they were separately engaged to represent Ms. Luciew at the time of Mr.

Hunt's contact with her.

Defendants stake their Rule 4.2 argument on Comment 7, which does address an attorney's

communication with former employees of a corporation. Comment 7 states, in relevant part:

> In the case of a represented organization, [Rule 4.2] prohibits communications with
> a constituent of the organization who supervises, directs or regularly consults with
> the organization's lawyer concerning the matter or has authority to obligate the
> organization with respect to the matter or whose act or omission in connection with
> the matter may be imputed to the organization for purposes of civil or criminal
> liability. *Consent of the organization's lawyer is not required for communication*
> *with a former constituent.* . . . In communicating with a current or former constituent
> of an organization, a lawyer must not use methods of obtaining evidence that violate
> the legal rights of the organization.

ABA Model Rule 4.2, Comment 7 (emphasis added). Defendants omitted the highlighted language

from their quotation of the Comment (Defs.' Mot. at 5). We suspect that this omission was not

merely an inadvertent slip of the pen, as the quoted language undermines defendants' contention that

11

Rule 4.2 categorically bars all *ex parte* contacts with persons who (like Ms. Luciew) are former employees of a corporation. Mr. Hunt's *ex parte* discussions with Ms. Luciew did not have to be blessed by defendants.[5]

Indeed, even as selectively quoted by defendants, Comment 7 does not bar a lawyer from contacting a former employee, but instead requires that in the event of any contact, the lawyer "must not use methods of obtaining evidence that violate the legal rights of the organization." As we explain below, the evidence before the Court shows that there was no violation here of that requirement.

## B.

Defendants contend that even if it was not improper for Mr. Hunt to have *ex parte* communications with Ms. Luciew, Mr. Hunt's conduct here – taking on Ms. Luciew as a client – is "significantly more egregious" and warrants disqualification (Defs.' Mot. at 8). Defendants contend that under these circumstances "it is presumed that Mr. Hunt has interviewed Luciew, discussed legal strategies with Luciew, and obtained confidential and privileged information from Luciew that is directly relevant to this case" (*Id.*). Furthermore, defendants contend that "Mr. Hunt is obligated to use the information he has obtained to help his clients' cases and protect their interests," which defendants interpret to mean that "Mr. Hunt will use privileged information obtained from Luciew

---

[5]Despite this district's adoption of ABA Model Rule 4.2, defendants urge the Court to rely on two District of Maryland cases (which district is itself split on the issue) that adopted a preliminary draft of the Restatement of the Law Governing Lawyers instead of Model Rule 4.2 (Defs.' Mot. at 7-9). In contrast to Model Rule 4.2, the preliminary draft of the Restatement imposes a no-contact rule with regard to current *and* former employees "whom the lawyer knows to have been extensively exposed" to confidential information of another party interested in the matter. *See Camden v. Maryland*, 910 F. Supp. 1115, 1121 (D. Md. 1996); and *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741 (D. Md. 1997); *but see Davidson Supply Co., Inc. v. P.P.E., Inc.*, 986 F. Supp. 956, 958-59 (D. Md. 1997) (rejecting *Camden*'s and *Zachair*'s adoption of proposed Restatement language and applying plain language of Model Rule 4.2). No courts in this district, however, have adopted the *Camden* and *Zachair* approach, and at least one court has explicitly rejected it. *See, e.g., Thorn v. Sunstrand Corp.*, No. 95 C 50099, 1997 WL 627607, at *3 (N.D. Ill. Oct. 10, 1997).

to further Plaintiff's case, and may advise Luciew to give testimony that violates Luciew's confidential separation agreement and/or mischaracterizes her work for Defendants in order to further Luciew's or Plaintiff's personal interests and bind the Defendants with her statements and allegations" (*Id.* at 8-9). Defendants contend that the risk that Ms. Luciew has discussed privileged information necessitates that Mr. Hunt be disqualified to "remove the taint of Mr. Hunt's representation of and communications with Luciew" and ensure that defendants will not face trial with the risk that their confidential information will be used against them (*Id.* at 9).

"The purpose of Rule 4.2 is to protect the attorney-client relationship with a corporate client." *Orlowski v. Dominick's Finer Foods, Inc.*, 937 F. Supp. 723, 727 (N.D. Ill. 1996) (internal quotations omitted). The scenario in this case is different from "[t]he classic conflict of interest situation," which "arises when a lawyer represents . . . two clients with opposing interests." *Daniels v. United States*, 54 F.3d 290, 294 (7th Cir. 1995). Most cases ruling on the issue of attorney disqualification based on Rule 4.2 address the situation where an attorney represents a party in a matter in which the adverse party is that attorney's former client. In those cases, the attorney will be disqualified if the subject matter of the two representations are "substantially related," because it will be irrebuttably presumed that the attorney had access to confidential information. *See Westinghouse Elec. Corp. v. Gulf Oil. Corp.*, 588 F.2d 221, 223 (7th Cir. 1978); *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Labs., Inc.*, 607 F.2d 186, 192 (7th Cir. 1979).

Despite defendants' arguments to the contrary, no such presumption exists here, where the attorney's client is a former employee of the adverse party-corporation. To be sure, former employees are barred from discussing privileged information to which they are privy. *See E.E.O.C. v. Univ. of Chicago Med. Ctr.* ("*UCMC*"), No. 11 C 6379, 2012 WL 1329171, at *3 (N.D. Ill. Apr.

13

16, 2012); *Thorn v. Sunstrand Corp.*, No. 95 C 50099, 1997 WL 627607, at *3 (N.D. Ill. Oct. 10, 1997). Nonetheless, former employees may "freely engage in communications" with opposing counsel as long as they do not divulge privileged information. *Orlowski*, 937 F. Supp. at 728, *see also Weibrecht v. S. Ill. Transfer, Inc.*, 241 F.3d 875, 881 (7th Cir. 2001) (citing *Orlowski*'s interpretation of Rule 4.2 with approval as to current employees).

The evidence submitted by plaintiff shows that Mr. Hunt did not seek or receive privileged or confidential information belonging to defendants as a result of his conversations or engagement with Ms. Luciew. Plaintiff has filed a declaration by Ms. Luciew which states, in relevant part:

- I have never had any conversation or communication with Mr. Hunt or any other member of his staff in which I disclosed, or was asked to disclose, any confidential or privileged information or any facts concerning my employment at C.D. Peacock or my involvement with Human Resource Affairs at C.D. Peacock or SA Peck. Nor have I revealed any communications I may have had with Mr. Vrkljan, Mr. Holtzman, Mr. Huffsmith, or any other member of management – nor has Mr. Hunt asked me to do so (Pl.'s Resp., Ex. A, ¶ 6).

- In fact, Mr. Hunt has never interviewed me about the case or Ms. Tomasian. My communications with Hunt's law firm have been limited to communications directly with Mr. Hunt and even then only regarding (1) the dates on which my deposition could be scheduled; and (2) whether Mr. Hunt would represent me at my deposition in the event C.D. Peacock began to take an adversarial position with me or to accuse me of somehow violating my agreement with them or any of my legal obligations to them (*Id.*, ¶ 7).

- I have not revealed to Mr. Hunt or anyone else from his firm any confidential information or privileged communications. Indeed, during my initial discussions with Mr. Hunt during 2010 he made it clear that he would not be discussing with me outside of the formal deposition any of the facts of Ms. Tomasian's case or any facts surrounding my communications with C.D. Peacock's lawyers or my involvement in the Human Resource Affairs of C.D. Peacock (*Id.*, ¶ 8).

- At no time . . . have I ever discussed with Mr. Hunt any matters relating to Ms. Tomasian's lawsuit, nor my communications with Mr. Huffsmith or any

14

other lawyer acting on behalf of C.D. Peacock. Nor have I discussed with Mr. Hunt any [*sic*] related to my involvement with Human Resource issues or affairs at C.D. Peacock. Our only communications have related to the scheduling of my deposition and my request that Mr. Hunt represent me in the event C.D. Peacock threatened to sue me or began taking an adversarial posture with me during a deposition by suggesting that I had violated my legal obligations or that I was violating my Release, Waiver and Non-Disclosure Agreement (*Id.*, ¶ 10).

These statements by Ms. Luciew show the purpose of Mr. Hunt's short-lived representation of Ms. Luciew was to protect her interests in the event defendants sought to accuse her of violating her separation agreement. We are satisfied that Mr. Hunt did not obtain from Ms. Luciew confidential or privileged information belonging to defendants in violation of Rule 4.2.

Defendants protest that the simple fact that Mr. Hunt's representation of Ms. Luciew gave him the opportunity to improperly obtain defendants' confidential and privileged information necessitates his disqualification (Defs.' Reply at 13-14). But, nothing about Mr. Hunt's limited representation of Ms. Luciew made it necessary or inevitable that Ms. Luciew would reveal to Mr. Hunt confidential or privileged information belonging to defendants that would be used to damage defendants in this case. Given that even this representation has ended, there should be no further occasion for Mr. Hunt to contact Ms. Luciew *ex parte* – at least, not without the consent of her current attorney.[6]

---

[6]Defendants' assertion that Ms. Luciew's statements may be used as admissions by defendants (Defs.' Mot. at 6, 13) is a red herring. That assertion is contrary to the proposition that statements of former employees are not binding on the defendant corporation, even though their sworn statements may be used as evidence. *Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, No. 05 C 3265, 2007 WL 257638, at *2 (N.D. Ill. Jan. 24, 2007), *aff'd*, 517 F.3d 476 (7th Cir. 2008). We emphasize that Rule 4.2 is not a vehicle for a defendant to conceal information that – while not confidential or privileged – may be harmful to that defendant's litigation interests. In any event, the evidence presented on this motion shows that despite defendants' suspicions, Ms. Luciew has not revealed confidential or privileged information to Mr. Hunt.

Courts in this district have repeatedly held that "[t]he possibility that former employees may reveal damaging information is insufficient to implicate Rule 4.2." *UCMC*, 2012 WL 1329171, at *3-4; *see also Ahern v. Bd. of Educ. of City of Chi.*, No. 92 C 4074, 1995 WL 680476, at *1 (N.D. Ill. Nov. 14, 1995) (same). In *Thorn*,1997 WL 627607, the district court upheld a magistrate judge's denial of the defendant corporation's motion to strike and bar the testimony of a former managerial employee of the defendant who had *ex parte* communications with the plaintiff's attorney. The court stated that the communications raised concerns of a possible breach of the defendant's attorney-client privilege because of the former employee's exposure to confidential information while working for the defendant. *Id.* at *3. The district court, however, affirmed the magistrate judge's determination that the communications did not breach the defendant's attorney-client privilege because the plaintiffs' attorney had taken adequate precautions against disclosure of privileged information, and there was no evidence to suggest that the former employee disclosed privileged information. *Id.* These precautions included advising the former employee of his right to retain an attorney, explaining the nature of the attorney-client privilege, and warning the former employee not to disclose any privileged information during the interview. *Id.* at *1.

In making its ruling, the *Thorn* court denied the defendant's request to review the written notes the plaintiff's attorney had made during her interview of the former employee. *Thorn*,1997 WL 627607, at *1. The defendant had argued that either it or the magistrate judge had to ensure that there was no breach of the attorney-client privilege. *Id.* The district court, however, did not find fault with the magistrate judge's decision not to inspect the notes *in camera*. *Id.*

Absent the presumption that applies to traditional conflict of interest cases, and absent any precedent outside the District of Maryland for disqualifying a plaintiff's attorney for having had *ex*

*parte* communications with – and/or for briefly representing – a defendant corporation's former management employee, this argument must fail. As we have explained above (*see supra* note 5), the two Maryland district court decisions that have come to a different conclusion are based on a rule that differs from Model Rule 4.2, and thus is not persuasive authority for the proposition that Mr. Hunt has violated Model Rule 4.2. There has been no violation of Rule 4.2 here.

## C.

We now turn to defendants' contention that disqualification is warranted under Canons 5 and 9 of the ABA Model Code of Professional Responsibility (Defs.' Mot. at 9). For the reasons set forth below, we find this contention to be without merit.

## 1.

Defendants cite to two ethical considerations of Canon 5, EC 5-14 and EC 5-15, which caution an attorney against representing two or more clients who may have differing, inconsistent, or conflicting interests (Defs.' Mot. at 10). The corresponding disciplinary rule, which defendants omit, states that discipline should be imposed on a lawyer who accepts or continues employment when the interests of another client may impair the independent professional judgment of the lawyer. Model Code of Professional Responsibility, Canon 5, DR 5-104. Defendants contend that Mr. Hunt should be disqualified under Canon 5 for representing both plaintiff and Ms. Luciew because "there can be no doubt that the interests of Luciew are inconsistent, conflicting, or diverse from those of Plaintiff, who has testified regarding alleged failings of Defendant C.D. Peacock's internal handling of human resources matters, for which Luciew was directly responsible while at C.D. Peacock" (Defs.' Mot. at 10).

At the threshold, any potential violation of Canon 5 is not for defendants to raise. Both of the ethical considerations cited by defendants are concerned with the harm a conflict of interest may cause an attorney's clients, and thus, as explained above, they are not an appropriate basis for defendants' motion to disqualify. Perhaps recognizing this point, defendants now concede that they lack standing to raise any issue concerning a potential conflict between Ms. Luciew and plaintiff (*see* Defs.' Reply at 11).

Regardless, there is no precedent for granting a defendant corporation's motion to disqualify a plaintiff's attorney under Canon 5 for representing a former management employee of the defendant. The cases defendants cite to support their argument (Defs.' Mot. at 10-11) are inapposite. In *Rosenwald v. United States*, 898 F.2d 585, 587-88 (7th Cir. 1990), upon which defendants rely, the criminal defendant filed a *habeas corpus* petition on the grounds that he received ineffective assistance of counsel under the Sixth Amendment because of the conflict of interest his attorney caused by representing the government's chief witness against him in an unrelated civil matter. In that case, the Seventh Circuit held that an evidentiary hearing was needed to determine whether the defense attorney's representation of the criminal defendant was influenced by his desire to protect his relationship with the government's chief witness. *Id.* at 588-89. In stark contrast to the situation here, where a corporate defendant "bears a heavy burden of proving facts required for disqualification" because of communications its former employee had with the plaintiff's counsel during civil discovery, *see RMB Fasteners*, 2012 WL 245124, at *1, in *Rosenwald*, 898 F.2d at 587,

the criminal defendant was making a constitutional, ineffectiveness of counsel argument predicated on a conflict of interest and thus was entitled to a presumption of prejudice.[7]

What's more, the evidentiary record establishes that both plaintiff and Ms. Luciew were aware of the dual representation and agreed to it (Pl.'s Resp., Ex. A (Luciew Decl.), ¶ 4; Pl.'s Resp. at 11, 13-14). To the extent that this dual representation may have created a conflict, those individuals were entitled to waive it. "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client . . . unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after disclosure." *O'Malley v. Novoselsky*, Nos. 10 C 8200, 11 C 110, 2011 WL 2470325, at *2 (N.D. Ill. June 14, 2011) (quoting former L.R. 83.51.7(b), patterned on the ABA Model Rules). They both did so here.

Finally, Mr. Hunt has withdrawn from representing Ms. Luciew. And, the record indicates he did so without obtaining information from Ms. Luciew that defendants say would create a conflict. For all of these reasons, we find that Canon 5 does not support the disqualification of Mr. Hunt.

## 2.

While Canon 9 is broader than Canon 5, it also does not provide grounds for Mr. Hunt's disqualification. Defendants note that "Canon 9 warns attorneys to avoid even the appearance of impropriety with regard to ethical violations" (Defs.' Mot. at 9-10). That much, of course, is true.

---

[7]Similarly, the movants in the other cases cited by defendants were also entitled to a presumption in favor of disqualification because they involved the typical conflict of interest situation, where an attorney represents a client in a matter that is substantially related and adverse to a position held by the attorney's former client (*see* Defs.' Mot. at 12-13). Contrary to defendants' arguments, those situations are not analogous to the instant case.

Canon 9 states that an attorney should be disciplined for failing to avoid "even the appearance of impropriety." Model Code of Professional Responsibility DR 9-101. This Court has generally recognized that "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important a consideration . . . that a court may disqualify an attorney for failing to avoid even the appearance of impropriety." *Commonwealth Ins. Co. v. Stone Container Corp.*, 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001) (commenting on impact of ABA Model Rule 1.7, regarding a lawyer's representation of clients that creates a conflict of interest).

Defendants contend that Mr. Hunt should be disqualified because he cannot avoid the appearance of impropriety here, since "there is no way for Mr. Hunt to shield himself from the information he has already received from his clients; the bell cannot be un-rung" (Defs.' Mot. at 11). Nevertheless, as with Model Rule 4.2 and Canon 5, the cases suggesting that disqualification might be the proper remedy for a Canon 9 violation address the traditional conflict of interest situation, where an attorney will be disqualified because of the presumption that attaches when an attorney represents a client in a matter that is substantially related and adverse to a position held by the attorney's former client. *See, e.g.*, *Schloetter v. Railoc of Ind., Inc.*, 546 F.2d 706, 709 (7th Cir. 1976). In those cases, "[t]he evidence need only establish the scope of the legal representation and not the actual receipt of the allegedly relevant confidential information." *See Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Labs., Inc.*, 607 F.2d 186, 189 (7th Cir. 1979). This presumption does not apply to the situation in this case, where Mr. Hunt briefly represented Ms. Luciew, a former management employee of defendants.

And, again, the evidentiary record undermines defendants' predicate assumption that withdrawal from the representation of Ms. Luciew is insufficient to cure Mr. Hunt's dual representation on the ground that he cannot shield himself from information he improperly obtained from Ms. Luciew. There is affirmative evidence that he did not improperly obtain information.

In sum, we do not believe that this case provides circumstances that justify the extreme remedy of disqualification. Mr. Hunt's continued representation of plaintiff (and not Ms. Luciew) does not so tarnish the public's image of this Court or the attorneys who practice here to necessitate such a drastic remedy.

## IV.

We now consider defendants' argument that Ms. Luciew's testimony should be barred from this case because Mr. Hunt committed unethical conduct by representing both Ms. Luciew and plaintiff, and by failing to disclose to this Court that he represented Ms. Luciew (Defs.' Mot. at 9). The Court has the "inherent power to protect the orderly administration of justice" which "necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Orso v. Bayer Corp.*, 2006 WL 2794975, at *6 (N.D. Ill. 2006) (quoting *Blanchard v. Edgemark Fin. Corp.*, No. 94 C 1890, 1998 WL 988958, at *9 (N.D. Ill. Sept. 11, 1998)). In determining whether to impose sanctions or which sanctions to impose, a court considers "the seriousness of the violations and whether the violations were intentional, as well as the nature and extent of prejudice suffered or likely to be suffered by the parties in the future as a result of the violation." *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 909 F. Supp. 1116, 1124 (N.D. Ill. 1995) (imposing sanctions on attorneys who violated Model Rule 4.2's

"no contact" rule, which prohibits *ex parte* communication with an agent of a represented party); *see also Blanchard*, 1998 WL 988958, at *9 (same).

Defendants' lead argument in support of barring Ms. Luciew's testimony is that her contact with Mr. Hunt has "poisoned" her as a witness (Defs.' Mot. at 13). We disagree. Even had Ms. Luciew divulged confidential or privileged information to Mr. Hunt, we fail to see – and defendants have not explained – how this would disqualify her from providing any relevant information she might possess. Nor do we see how comments Mr. Hunt may have made to Ms. Luciew would disqualify her as a witness. While Mr. Hunt's short-lived representation may expose Ms. Luciew to impeachment that may not otherwise have been available, that would affect only the weight of her testimony – it is not a basis to exclude that testimony altogether.

Defendants' remaining arguments to exclude Ms. Luciew's testimony are even flimsier. *First*, defendants contend that Ms. Luciew's consent in February 2012 to appear for a deposition upon notice – without a subpoena – breaches her commitment in the separation agreement not to voluntarily assist in litigation against defendants (Defs.' Mot. at 13-14). We are not so sure that a decision to appear without a subpoena – when the inevitable alternative is compelled attendance by subpoena – is "voluntary" assistance. But, if it is, the defendants are free to pursue that matter in a separate action for breach of contract; it provides no basis to exclude Ms. Luciew's testimony here.

*Second*, defendants make the even more extreme argument that the separation agreement bars Ms. Luciew from testifying even under compulsion of process (Defs.' Mot. at 14). We find it difficult to fathom that defendants truly believe that private parties by contract can make a witness who may possess relevant information out of bounds at trial or in a pretrial deposition. Perhaps

defendants have thought better of this argument, as they do not assert it again in their reply. However, to be clear, this Court flatly rejects this argument.

## CONCLUSION

For the reasons discussed above, we deny defendants' motion to disqualify and for a protective order (doc. # 168).

**ENTER:**


**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: July 3, 2012**

23