UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HELENE TOMASIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 5665 |
| | ) | |
| v. | ) | District Judge Elaine Bucklo |
| | ) | |
| C.D. PEACOCK, INC., and, | ) | Magistrate Judge Sidney I. Schenkier |
| JEWELCOR, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This case arises out of a complaint filed by plaintiff, Helene Tomasian, against her former

employers, defendants C.D. Peacock, Inc., and Jewelcor, Inc., alleging sex discrimination, sexual

harassment, national origin discrimination, religious discrimination, violations of the Equal Pay Act,

and retaliation (doc. # 1). We reviewed the tortuous discovery history of this case – which includes

nearly fifteen fully briefed motions from May 2011 through March 2012 – in our opinion denying

defendants' motion to disqualify plaintiff's counsel, Keith L. Hunt, and for a protective order barring

Pat Luciew from testifying. *See Tomasian v. C.D. Peacock, Inc.*, No. 09 C 5665, 2012 WL 2590493,

at *1 (N.D. Ill. July 3, 2012). We now address defendants' separate motion for sanctions, including

dismissal, based on plaintiff's failure to preserve documents (doc. # 155).

While we do not repeat the litany of discovery motions filed in this case, a brief history of

the facts surrounding this case is important to understanding the context within which defendants'

motion for sanctions arose. Ms. Tomasian, represented by Mr. Hunt, filed her complaint three years

ago, on September 11, 2009 (doc. # 1). Though the district judge presiding at the time – the

Honorable William J. Hibbler – intended to set a discovery schedule on December 15, 2009 (doc.

# 11), extensive motion practice pushed the filing of the scheduling order to November 16, 2010 (doc. # 50). At that point, Judge Hibbler set discovery to close by June 28, 2011 (doc. # 51). Again, extensive motion practice and unsuccessful attempts at discovery delayed proceedings and stymied discovery, and on September 1, 2011, Judge Hibbler set a new discovery cut-off date of April 16, 2012 (doc. # 97: 09/01/11 Order).

On September 20, 2011, we admonished the parties that "this case has been stuck in the mud," and they had "completely wasted" the "ample" time they had to proceed with discovery (doc. # 129: 09/20/11 Tr. at 7, 12). Nevertheless, at a hearing on January 17, 2012, the parties informed the Court that no depositions had yet been taken, and no dates had been set for any depositions (doc. # 142: 01/17/12 Order). We proceeded to grant defendants' third motion to compel in significant part, and we ordered the parties to meet and confer regarding defendants' claims that there were significant attachments missing and gaps in the emails plaintiff had produced to date (*Id.*). In addition, we awarded defendants one-half of the attorneys' fees and costs incurred in briefing the motion to compel and all of the attorneys' fees defense counsel incurred by appearing at the hearing.

When the parties met on January 26, 2012, to discuss the significance and relevance of the data defendants alleged was missing, plaintiff's counsel disclosed to defense counsel for the first time that plaintiff had not saved any emails that she had sent prior to January 2012 (doc. # 155: Defs.' Mot. at 6). Indeed, Ms. Tomasian's Hotmail account had "never" saved her sent emails since her friend created the account in 2004, and she never contacted Hotmail to ask if she could change her settings to save her sent emails (Defs.' Mot., Ex. A: Tomasian Dep. at 532, 534-36). Ms. Tomasian also testified that she does not know how to back up or preserve her emails, so she never

did so (*Id.* at 536, 538). Nevertheless, Ms. Tomasian kept emails in her inbox and deleted email folders, including email chains of sent and received messages (*Id.* at 532-33).

Ms. Tomasian "found out later that you actually can change something in there, and I – I now am saving them (*Id.* at 532)." She changed her settings to save sent emails "very recently. Maybe a month" before her deposition on February 24, 2012 (*Id.* at 534). Ms. Tomasian started saving her sent emails because "in this process of being asked all these questions," her attorney may have said something to her about it (*Id.*). In addition, Ms. Tomasian has deleted some emails since filing her lawsuit, but she does not believe she deleted any emails important to her case, such as emails she sent to current or former C.D. Peacock employees, or any emails related to her business activities (*Id.* at 535). Ms. Tomasian's attorney, Mr. Hunt, has "personally searched her email," and he helped search for emails responsive to defendants' document requests (*see Id.*; 01/17/12 Tr. at 14).

In the motion now before us, defendants argue that pursuant to Federal Rule of Civil Procedure 37 and this Court's inherent authority, we should impose sanctions upon plaintiff, including dismissal of the lawsuit, because of plaintiff's "(1) failure to timely produce relevant and discoverable information; (2) failure to comply with this Court's orders regarding the production of that information; (3) false and misleading statements to defense counsel and the Court; and (4) destruction of and/or failure to preserve evidence" (doc. # 155: Defs.' Mot. at 15). As defendants seek sanctions including dismissal, resolution of the motion "is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge must review the magistrate judge's report and recommendation *de novo*." *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 869 (7th Cir. 1996). Accordingly, we address the motion not in a Memorandum Opinion and Order, but in a Report and Recommendation to the district judge. *See*

3

*MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, No. 08 C 139, 2011 WL 812140, at *3 (N.D. Ill. Mar. 1, 2011).[1]

For the reasons that follow, we recommend that the district judge grant defendants' motion for sanctions, but deny their request for the ultimate sanction of dismissal. We find that more modest sanctions are sufficient to address defendants' claim of prejudice and to express the Court's disapproval of plaintiff's conduct.

## I.

Rule 37 sets forth a wide array of sanctions available when a party fails to comply with a court discovery order, including a court's order on a motion to compel. Fed. R. Civ. P. 37(b). "[W]hen a domain of judicial action is covered by an express rule, such as Rules 26 and 37 of the civil rules, the judge will rarely have need or justification for invoking his inherent power," *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 752 (7th Cir. 2005), and "the analysis is essentially the same," *Danis v. USN Commc'ns, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *30-31 (N.D. Ill. Oct. 23, 2000). We therefore focus our analysis on Rule 37, and do not separately address the inherent authority of courts to sanction abuses of the discovery process.

The threshhold issue to determining what sanctions, if any, to impose on plaintiff for failing to preserve her sent emails, is whether plaintiff had a duty to preserve these emails, and when such

---

[1] Initially, plaintiff argues that defendants' motion should be heard by the district judge rather than this Court because the motion goes beyond the scope of Judge Hibbler's original referral order, which referred "discovery disputes" to this Court (doc. # 185: Pl.'s Resp. at 3). As explained in our opinion on the motion to disqualify, this argument is a non-starter. It is inconsistent with plaintiff's earlier statements to this Court and Judge Bucklo (the district judge now presiding in the case) that this Court would handle these motions. *See Tomasian*, 2012 WL 2590493, at *4. Moreover, Judge Bucklo has issued a supplemental order referring all non-dispositive pretrial matters to this Court (doc. # 202). Moreover, contrary to plaintiff's argument (Pl.'s Resp. at 2-3), the fact that this is a dispositive motion is not grounds to strike or transfer the motion to Judge Bucklo.

a duty arose.[2]  "[A] party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428-29 (7th Cir. 2010).  A party's obligation to preserve documents relevant to a discrimination claim is triggered when an EEOC charge is filed.  *See Park v. City of Chicago*, 297 F.3d 606, 615-16 (7th Cir. 2002).  In this case, Ms. Tomasian's duty to preserve documents was triggered when she filed her EEOC charge on May 23, 2008 (doc. # 1: Pl.'s Compl. ¶ 15).

Next, we must determine: (1) the scope of plaintiff's duty to preserve; (2) whether the duty was breached; (3) whether the level of culpability involved in the breach rises to the level of willfulness, bad faith or fault; and (4) what prejudice resulted from the breach of the duty to preserve or produce the documents.  *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *9-10 (N.D. Ill. Aug. 18, 2005) (citing *Danis*, 2000 WL 1694325, at *31).  We address each of these considerations below.

## II.

"Parties to a lawsuit have a broad duty to preserve discoverable materials."  *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10 C 204, 2012 WL 1886353, at *11 (N.D. Ill. May 23, 2012).  A litigant "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request."  *Danis*, 2000 WL 1694325, at *32 (internal citations and quotations omitted).  *See also Jones v. Bremen High Sch.*

---

[2]Defendants at times refer to plaintiff's actions as "deletion" and "spoliation or destruction" of evidence (*see, e.g.*, Defs.' Mot. at 2, 7), and at other times accuse plaintiff of the "failure to preserve" her sent emails (*see, e.g.*, *Id.* at 6).  While plaintiff admits that she may have at times deleted emails, the preceding facts show that the characterization of plaintiff's actions as a failure to preserve is more appropriate, and that is how we refer to plaintiff's actions here.

*Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *6 (N.D. Ill. May 25, 2010) ("A defendant has a duty to preserve evidence that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action.").

Defendants contend they were entitled to emails Ms. Tomasian sent to: former C.D. Peacock employees Pat Luciew (former Vice President of Human Resources) and Mirav Pogofsky; individuals for whom she brokered jewelry sales; individuals from whom she sought employment; individuals interested in selling their gold; individuals for whom she repaired jewelry; and graphic designers with whom she worked to create marketing materials for her companies Red Gem & Co. and Helene Lucille & Co. (Defs.' Mot. at 2). Plaintiff contends that she was not under a duty to preserve the emails because she "could not have foreseen" they would be relevant (Pl.'s Resp. at 12).

Plaintiff's argument is a non-starter, as she clearly had a duty to preserve her sent emails. The standard for whether plaintiff should have foreseen that the emails would be relevant or requested in discovery is that of a reasonable person. *Danis*, 2000 WL 1694325, at *32. Plaintiff admittedly sent emails to former or current employees of defendants, and she has sent emails relating to her business activities since being employed by defendants (*see* Defs.' Mot., Ex. A: Tomasian Dep. at 526-31). A reasonable person should have known that this information would be relevant and requested in discovery on both liability and damages issues in this case.

Moreover, though we admonished plaintiff's attorney that a court order should not be needed before such relevant discovery is produced (*see* doc. #15: 01/17/12 Tr. at 14-15), we issued multiple orders to plaintiff to produce documents which would include the emails plaintiff did not preserve. On June 20 and October 21, 2011 we ordered plaintiff to produce information responsive to defendants' requests for production (Defs.' Mot., Ex. B: Defs.' Doc. Requests; and Ex. C: Defs.'

6

Supp'l Doc. Request), including all electronic and paper documents relating to plaintiff's lost wages, alleged damages, and income since January 2005 (doc. # 84: 06/20/11 Order; doc. # 110: 10/21/11 Order).[3] In addition, on January 17, 2012, we ordered plaintiff to produce documents responsive to defendants' supplemental document requests numbers 1 through 5, for the time period January 1, 2008, to the present (doc. # 142: 01/17/12 Order). Those requests called for production of all electronically stored information ("ESI") concerning communications between plaintiff and any former or current employee of defendants, and all ESI between plaintiff and any third party relating to plaintiff's activities, health, social life, efforts to obtain employment, sale of her personal jewelry, and any electronically posted comments relating to defendants (*see* Defs.' Mot., Ex. C at 6-7).

## A.

Despite this obligation to preserve the sent emails, plaintiff argues that any emails she failed to preserve were not "important or related to this litigation" (Pl.'s Resp. at 2). Plaintiff contends that the sent emails were only related to her alleged back pay damages, and she does not rely on emails to establish her back pay claims (*Id.* at 4-5). Besides, she "does not recall deleting any emails related to her business activities" (*Id.* at 13). Plaintiff further asserts that she never emailed former employees or third parties about her claims of sexual harassment or discrimination and that none of the missing emails affected liability issues (*Id.* at 4-5).

We are baffled at how plaintiff can say with such confidence that emails she sent and did not preserve were not important or related to this litigation. As Ms. Tomasian explains it, she did not

---

[3] We note that plaintiff incorrectly claims defendants did not propound discovery requests specifically seeking plaintiff's emails until September 15, 2011 (Pl.'s Resp. at 6, 10). To the contrary, in defendants' initial document requests propounded on March 7, 2011, they sought any and all documents, which they defined as including, among other things, "electronic mail, text messages, [and] social media communications" (Defs.' Mot., Ex. B at 1-2).

make a determination (with or without the aid of counsel) that the sent emails were unimportant. Rather, she failed to preserve them across the board, without giving any consideration to whether any of them might be subject to discovery in this case.

In any event, Ms. Tomasian's arguments that she had no duty to perserve *any* sent emails is without merit. The obligation to preserve evidence extends to documents relevant to a plaintiff's claimed damages. *See, e.g., Webb v. CBS Broad., Inc.*, No. 08 C 6241, 2011 WL 1743338, at \*6 (N.D. Ill. May 6, 2011). Emails that plaintiff sent related to her business activities – such as to entities or individuals for whom she brokered sales of jewelry or gold or from whom she sought employment – would bear on the issue of damages here, specifically, the income plaintiff earned since she left defendants' employment. Moreover, plaintiff admitted she sent emails to some former employees of defendants, including Ms. Pogofsky and Ms. Luciew, friends with whom Ms. Tomasian may naturally have discussed her separation from defendants. Those emails may have information relevant to liability issues.

While plaintiff points out that we can only "speculate" whether the missing emails contained the evidence sought by defendants (Pl.'s Resp. at 11), the responsibility for that state of affairs rests squarely with plaintiff. *See Bryant v. Gardner*, 587 F. Supp. 2d 951, 969 (N.D. Ill. 2008) (holding that sanctions for failing to preserve potentially relevant information were appropriate where the party's actions made it "impossible to determine" the existence of certain evidence). We are not willing to give plaintiff a pass on her responsibility to preserve documents merely on her unsubstantiated say-so about what they would contain. "[A] party cannot destroy documents based solely on its own version of the proper scope of its document retention responsibilities." *YCB Int'l, Inc. v. UCF Trading Co., Ltd.*, No. 09 C 7221, 2012 WL 3069683, at \*7 (N.D. Ill. June 12, 2012)

8

(internal citations and quotations omitted). Defendants should not have to accept uncritically plaintiff's recollections about the content of emails she sent during a four-year period.

This is particularly true where Ms. Tomasian's past statements concerning her access to various discoverable and relevant material in this case have been shown to be incorrect with distressing frequency. Plaintiff has repeatedly claimed not to have responsive information to certain discovery requests, which information then turns up in her possession (doc. # 197: Defs.' Reply, Ex. B: 01/17/12 Tr. at 39). As we stated at the January 17, 2012 hearing, "a situation like that [] engenders suspicion justifiably," and for that plaintiff only "has herself to blame" (*Id.*).[4]

Finally, the fact that plaintiff does not rely on emails to establish her back pay claims does not mean that defendants cannot rely on them to refute her claims. Plaintiff cannot "unilaterally dictate the scope of discovery" available to defendants. *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, MDL 997, 1998 WL 808989, at *2 (N.D. Ill. Nov. 17, 1998). Parties "have an independent obligation to preserve documents relating to their claim, and not just those documents that they intend to use to support their claim." *Webb*, 2010 WL 2104179, at *5. Defendants were entitled to emails sent by plaintiff that could confirm – or contradict – her claims for damages, as well as her claims of discrimination in the workplace.

## B.

Plaintiff also argues that she was not under a duty to preserve her sent emails because they were cumulative or supplemental of other evidence she produced. Plaintiff contends that she

---

[4] In fact, at the January 17, 2012 hearing and argument on defendants' third (fully-briefed) motion to compel, where we ordered the parties to meet to discuss defendants' allegations of missing email information, plaintiff and her attorney were already well aware that plaintiff's sent emails – some of which were responsive to defendants' requests and Court orders – no longer existed. *See YCB*, 2012 WL 3069683, at *11 (finding "fault" where the non-complying party "repeatedly challenged rulings to produce relevant materials without disclosing that at least some of those materials no longer existed at the time they were ordered to produce them").

produced "nearly 700 pages of emails," including email chains with plaintiff's own sent messages ("even produc[ing] emails wholly unrelated to this litigation"), that contained merely "supplemental evidence" of that shown in plaintiff's income tax returns, bank statements, invoices, and receipts (Pl.'s Resp. at 4, 10, 13). In addition, plaintiff argues that the sent emails were cumulative of the evidence defendants received from the over one-hundred subpoenas they served in this case, including those served on plaintiff's witnesses and customers (*Id.* at 11-12).

Plaintiff's arguments misunderstand her duty to preserve and produce discoverable materials. Plaintiff's duty to preserve does not change based on defendants' other discovery efforts. While plaintiff may argue that defendants did not suffer prejudice because the missing emails were cumulative of other evidence produced, this argument does not excuse plaintiff's failure to preserve her sent emails. Plaintiff "cannot simply piggyback on [the opposing party's] discovery efforts." *Webb*, 2010 WL 2104179, at *5.

Moreover, the emails that plaintiff did produce were not merely cumulative of the sent emails that she failed to preserved. Though plaintiff produced email chains that she received in her inbox, her inbox only included *some* of her sent emails. Her inbox did not include emails that she sent which were never replied to, and some email replies that she received in her inbox did not include the original email sent by Ms. Tomasian. In addition, plaintiff's production of what she herself describes as "wholly unrelated" emails does not absolve plaintiff from failing to preserve emails that should have been kept.

### III.

Having found that Ms. Tomasian had a duty to preserve the sent emails, we now turn to whether Ms. Tomasian breached her duty to preserve relevant and discoverable evidence. "The duty

10

to preserve documents in the face of pending litigation is not a passive obligation. Rather, it must be discharged actively." *Danis*, 2000 WL 1694325, at *32. "[M]ore than good intentions [a]re required; those intentions ha[ve] to be followed up with concrete actions reasonably calculated to ensure that relevant materials would be preserved," *Id.* at *38, because "[t]his duty of disclosure would be a dead letter if a party could avoid the duty by the simple expedient of failing to preserve documents that it does not wish to produce," *Id.* at *5.

"[T]he courts have a right to expect that litigants and counsel will take the necessary steps to ensure that relevant records [paper or electronic] are preserved when litigation is reasonably anticipated, and that such records are collected, reviewed, and produced to the opposing party." *Webb*, 2010 WL 2104179, at *6 (parties must "search in the right places for those records"). "Once a party files suit or reasonably anticipates doing so, it has an obligation to make a conscientious effort to preserve ESI [] that would be relevant to the dispute." *YCB*, 2012 WL 3069683, at *9.

Here, at least until January 2012, neither plaintiff nor her attorney took any affirmative steps to preserve relevant evidence including emails since plaintiff filed her EEOC complaint in 2008, and it is unclear whether plaintiff's attorney ever instructed her to preserve documents related to the litigation. These steps should have been taken once plaintiff "began contemplating" suing defendants. *See YCB*, 2012 WL 3069683, at *9. Furthermore, plaintiff's failure to preserve her sent emails violated this Court's orders beginning in June 2011. Thus, plaintiff's failure to preserve the emails and take any steps to ensure this was done constitutes a breach of plaintiff's duty to preserve.

## IV.

We must next determine whether the level of plaintiff's culpability involved in the breach of her duty to preserve evidence rises to the level of willfulness, bad faith, or fault. While negligence

11

"is a degree of fault sufficient for imposing sanctions," *e360 Insight, Inc. v. Spamhaus Project*, 658

F.3d 637, 642-43 (7th Cir. 2011), defendants seek the ultimate sanction of dismissal with prejudice

for plaintiff's failure to preserve evidence or, alternatively, a spoliation instruction to be given to the

jury at the time of trial (Defs.' Mot. at 15 and n.2). Both of these sanctions require a greater level

of culpability than negligence. Accordingly, we must determine plaintiff's level of culpability to

determine what level of sanctions the court should impose. *See e360 Insight*, 658 F.3d at 643.

**A.**

Initially, we note that Rule 37(e), "entitled 'Failure to Provide Electronically Stored

Information,' addresses an aspect of culpability and good faith in the context of ESI." *YCB*, 2012

WL 3069683, at *7. Rule 37(e) provides that, "[a]bsent exceptional circumstances, a court may not

impose sanctions under these rules on a party for failing to provide electronically stored information

lost as a result of the routine, good-faith operation of an electronic information system." Fed. R. Civ.

P. 37(e). This subdivision recognizes the risk that some computer operations may routinely alter or

destroy information, so that a party may lose potentially discoverable information without culpable

conduct on its part. *See* Fed. R. Civ. P. 37, Advisory Committee's Notes to 2006 Amendments.[5]

However, the Advisory Committee Notes further clarify that "[g]ood faith in the routine

operation of an information system may involve a party's intervention to modify or suspend certain

features of that routine operation to prevent the loss of information, if that information is subject to

a preservation obligation." Fed. R. Civ. P. 37, Advisory Committee's Notes to 2006 Amendments.

In addition, the steps the party takes to comply with a court order bear on a party's good faith in the

---

[5]When first added to Rule 37 in 2006, this provision was codified as Rule 37(f) but has since been renumbered as Rule 37(e). The 2006 Advisory Committee Notes that refer to Rule 37(f) thus speak to what is now labeled as Rule 37(e).

routine operation of an information system. *Id.* As explained above, plaintiff had a preservation obligation in this case dating back to the filing of her EEOC charge, and this obligation extended to her sent emails. As such, plaintiff's routine, good faith computer operations should have included taking the basic step of changing her email settings to avoid deleting all of her sent emails. As explained above, plaintiff took no steps to preserve her relevant sent emails. Thus, we find that Rule 37(e)'s exception to sanctions does not apply here.

## B.

Although plaintiff's actions do not fall under Rule 37(e)'s good faith exception, it does not follow that plaintiff's failure to preserve her sent emails was done in bad faith, or that her culpability rose to a level that would justify the "severe and draconian sanction" of dismissal with prejudice. *See Oropeza v. Appleillinois, LLC*, No. 06 C 7097, 2010 WL 3034247, at *7 (N.D. Ill. Aug. 3, 2010). Courts should exercise caution when considering whether to jettison a plaintiff's claims without consideration of the merits, due to violations of the rules of discovery. Dismissal as a sanction for a discovery violation is "reserved for cases in which the offending party has demonstrated wilfulness, bad faith, or fault," or "when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (internal citations and quotations omitted). Dismissal is generally not warranted unless the discovery violation involves "egregious conduct," or "extreme bad faith on the order of perjurious testimony or intentional destruction of evidence." *Chamberlain Group, Inc. v. Lear Corp.*, 270 F.R.D. 392, 399 (N.D. Ill. 2010).

In our judgment, plaintiff's actions here did not fall to this level. Plaintiff testified that she did not know her Hotmail settings did not retain sent emails, and "she did not reasonably understand

13

at the time how those communications could be relevant" (Pl.'s Resp. at 14-15). Plaintiff did not intentionally destroy her sent emails; she failed to preserve them. There is circumstantial evidence
— to support the proposition
that plaintiff did not simply intend to wipe her computer clean of all emails she sent – she did not delete emails in her inbox which contained email chains. Rather, they were kept and produced. While defendants have presented evidence that plaintiff has repeatedly claimed ignorance or mistake in the face of her discovery obligations, they have not shown that her conduct was so egregious as to justify dismissal of the case with prejudice. Her purported ignorance does not save her from breaching her duty to preserve discoverable evidence, but in our judgment it does take her out of the realm of the severe sanction of dismissal.

Defendants rely heavily on *Rosenthal Collins Group v. Trading Techs. Int'l Inc.*, No. 05 C 4088, 2011 WL 722467 (N.D. Ill. Feb. 23, 2011), in support of their argument that plaintiff's actions constituted bad faith that warrants dismissal with prejudice. This reliance is misplaced. In *Rosenthal Collins*, the court found evidence of bad faith where the moving party had presented forensic evidence – and the opposing party did not dispute it – that "virtually every piece of media ordered produced by the Court in May 2007 and July 2008 was wiped, altered, or destroyed after those orders were entered." *Rosenthal Collins*, 2011 WL 722467, at *8-10. In *Rosenthal Collins*, the court was presented with evidence that the party deliberately altered and destroyed evidence central to the issues in that case in an attempt to invalidate the opposing party's patents, thus attempting to perpetrate a fraud on the court and the other parties in the case. *Id.*

That is a far cry from the situation here. As noted above, plaintiff did not actively destroy evidence. She failed to preserve her sent emails; yet she retained – and produced – the emails in her inbox, including email chains, as well as other sources of some of the information contained in her

14

sent emails.[6] Defendants argue that plaintiff showed bad faith by making false and misleading statements regarding the nature and amount of her post-employment income, the completeness of her document production, and the retention of sent e-mails on her Hotmail account (Defs.' Mot. at 9-10, 13). Again, defendants present evidence that plaintiff has been extraordinarily ignorant and/or mistaken as to her document production and other discovery obligations. However, defendants have not shown that plaintiff acted willfully or in bad faith.

## C.

While plaintiff's actions do not rise to the level of bad faith, her extreme level of ignorance and mistake as to her discovery obligations demonstrates that more than mere negligence was at play here. A party's "extraordinarily poor judgment" or "gross negligence" in breaching a duty to preserve evidence can be characterized as "fault." *Danis*, 2000 WL 1694325, at *38 (citing *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992)). "Fault [] doesn't speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct – or lack thereof – which eventually culminated in the violation." *Marrocco*, 966 F.2d at 224. "Fault, in this context, suggests objectively unreasonable behavior; it does not include conduct that we would classify as a mere mistake or slight error in judgment." *Danis*, 2000 WL 1694325, at *33.

Defendants have established plaintiff's fault here. They have shown that plaintiff repeatedly violated discovery orders and her discovery obligations. They have presented unrebutted evidence that while plaintiff's Hotmail account was programmed to delete sent emails, Hotmail accounts have default settings that save all sent emails (Defs.' Mot. at 6-7, citing Ex. J, Dudek Decl. ¶ 4).

---

[6]Defendants' ability to access at least some of the information that was contained in the sent emails is another reason that the "drastic" sanction of dismissal would be wholly inappropriate here. We discuss this lack of "substantive prejudice" further below.

Defendants have also shown that Hotmail provides simple instructions to change a user's settings to save sent emails (*Id.*). Nevertheless, neither plaintiff nor her attorney took any steps to save her sent emails until over three years after she filed her EEOC charge. Plaintiff's fault in failing to preserve her sent emails and violating her discovery obligations warrants the imposition of sanctions.

## V.

To determine what sanctions are warranted here, we begin with the premise that "[s]anctions are intended generally to 'ameliorate the prejudice caused to an innocent party by a discovery violation,' 'punish the party who violates his or her obligations,' and 'to deter others from committing like violations.'" *Sloan Valve*, 2012 WL 1886353, at *3 (quoting *Danis*, 2000 WL 1694325, at *31). "A court is given broad discretion to choose the appropriate sanction for a discovery violation given the unique factual circumstances of every case." *Id.* (quoting *Danis*, 2000 WL 1694325, at *31). We seek to fashion sanctions that are "proportionate to the circumstances surrounding a party's failure to comply with discovery rules." *Rice*, 333 F.3d at 784. "Among the factors included in th[is] analysis are 'the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit.'" *Id.* (quoting *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998)).

## A.

We first consider what prejudice defendants suffered from plaintiff's failure to preserve her sent emails. Where a party's breach of her duty to preserve evidence "is the result of fault rather than a more culpable mental state, courts often have used prejudice as a balancing tool or fulcrum upon which the scales may tip in favor of default or against it." *Danis*, 2000 WL 1694325, at *34.

16

Defendants argue that they have suffered both substantive and financial prejudice as a result of plaintiff's discovery violations.

**1.**

Substantive (or merits) prejudice results from harm to the merits of the moving party's case. To determine the extent of substantive prejudice defendants suffered, we look to whether the content of the missing emails was produced in other documents or whether defendants have obtained similarly relevant or probative information from other sources. *See Danis*, 2000 WL 1694325, at *44-45. In other words, we ask if, at the end of the day, plaintiff's failure to preserve evidence deprived defendants of the opportunity to defend against plaintiff's claims at trial. *See Id.* at *50.

Defendants argue that they have been irreparably harmed by plaintiff's failure to preserve evidence because the sent emails may have contained evidence on plaintiff's back pay claims and defendants' intended after-acquired evidence defense, and the emails may have provided grounds to impeach plaintiff's credibility at trial (Defs.' Reply at 2-3). We disagree that plaintiff's failure to preserve these emails caused defendants to suffer such severe substantive prejudice.

Much of the prejudice defendants identify has been ameliorated by other evidence produced by plaintiff and information defendants received through third-party subpoenas. Defendants concede they already have obtained a great deal of evidence on plaintiff's business activities with which to combat plaintiff's back pay claims (Defs.' Reply at 15). In addition, some of the emails plaintiff sent to current or former employees of defendants are contained in email chains plaintiff has produced to defendants and in documents defendants subpoenaed from plaintiff's former co-workers.[7]

---

[7]The availability of "at least some evidence" that allows defendants to defend against plaintiff's claims is further reason that the drastic sanction of dismissal is not warranted. *See Danis*, 2000 WL 1694325, at *34-35.

Moreover, the parties have stated that they intend to depose plaintiff's former co-workers, from which they can further probe this information (doc. # 164: 03/06/12 Order). Defendants have plenty of ammunition with which to attack plaintiff's credibility even without her sent emails. Thus, in determining the appropriate level of sanctions to impose, we find that the level of merits prejudice suffered by defendants is not great.

## 2.

Nevertheless, defendants have suffered significant financial prejudice due to plaintiff's conduct. Defendants have expended large sums of money and time in attempting to obtain discovery from plaintiff, including filing four motions to compel responses to their document requests and interrogatories (docs. ## 70, 104, 135, 159). In addition, defendants were forced to respond to multiple motions by plaintiff seeking to limit defendants' access to discovery (*see* docs. ## 67, 111, 115, 166). Some of the information defendants sought, or plaintiff sought to block access to, may have been contained in the sent emails that plaintiff had never preserved. Moreover, defendants were forced to spend money to try to obtain some of that information from other sources.

This is not the kind of discovery process envisioned by Rule 26(a)(1) or by this Court's prior orders. *See Danis*, 2000 WL 1694325, at *48. Thus, we recommend that sanctions be imposed against plaintiff to ameliorate the financial prejudice she caused defendants. *See Sloan Valve*, 2012 WL 1886353, at *3.[8]

---

[8]Plaintiff also argues that any sanctions would be duplicative because they were sanctioned on January 17, 2012, for not producing emails (Pl.'s Resp. at 9-10). On January 17, 2012, the Court awarded defendants one-half of the fees and costs incurred in briefing their then-latest motion to compel, and the fees incurred by the two defense counsel appearing at that day's hearing (doc. # 142: 01/17/12 Order). That sanction – for plaintiff's failure to produce documents covered in that motion to compel – is not duplicative of the sanction sought here, for the failure to preserve evidence.

18

**B.**

We now turn to the sanctions that we recommend. With respect to the issue of financial prejudice, defendants request that we order plaintiff to pay "attorneys' fees and costs – not just of the instant motion but for all those incurred by Defendants as a result of the events identified in the motion and supported by the exhibits hereto" (Defs.' Mot. at 15 n.12). Defendants' requested sanction goes beyond the need to ameliorate the financial prejudice plaintiff caused defendants. As explained above, sanctions should be "proportionate to the circumstances surrounding a party's failure to comply with discovery rules." *Rice*, 333 F.3d at 784.

Accordingly, we recommend that the district judge award defendants the other half of the fees and costs that they incurred in briefing the motion to compel we decided on January 17, 2012 (*see* doc. # 142: 01/17/12 Order). Defendants had to go through the time and expense of briefing that motion, when both plaintiff and her attorney knew by then that at least some of the responsive documents sought by defendants no longer existed. In addition, we recommend awarding defendants their entire fees and costs incurred in briefing the instant motion for sanctions, which would not have been necessary but for plaintiff's failure to preserve evidence. We do not recommend awarding defendants their attorneys' fees and costs incurred in briefing previous discovery motions because the discovery violation at issue here – plaintiff's breach of her duty to preserve her sent emails – constituted a smaller, undefined portion of those prior discovery disputes.

While these financial sanctions will ameliorate the financial prejudice to defendants, we recommend that additional sanctions be imposed to address any lingering merits prejudice that may exist. In addition, further sanctions are warranted to reprimand plaintiff for her fault in violating her discovery obligations and to deter others from committing like violations. *Sloan Valve*, 2012 WL

19

1886353, at *3. In this case, plaintiff has a history of discovery violations which have wasted the Court's judicial resources as well as defendants' time and resources (*see* Defs.' Mot. at 5-6, 14-15). Plaintiff has repeatedly flouted this Court's orders and her discovery obligations. Her actions in failing to preserve sent emails have further delayed resolution of this already long-standing case. Additional sanctions are thus important here "to impress upon h[er] the importance of the preservation duties that [s]he failed to properly discharge and to deter others from taking that obligation lightly." *Danis*, 2000 WL 1694325, at *51.

Defendants seek, as an alternative to dismissal, a spoliation instruction. Seventh Circuit pattern jury instruction 1.20 sets forth the following spoliation/destruction of evidence instruction: "You may assume that such evidence would have been unfavorable to [Other Party] only if you find by a preponderance of the evidence that: (1) [Other Party] intentionally [destroyed the evidence] [caused the evidence to be destroyed]; and (2) [Other Party] [destroyed the evidence] [caused the evidence to be destroyed] in bad faith." In other words, the Court may only impose an inference that the missing documents would have contained information adverse to the spoliator's case if the party moving for sanctions shows that "documents were intentionally destroyed in bad faith," *i.e.*, "for the purpose of hiding adverse information." *Everett v. Cook County*, 655 F.3d 723, 726-27 (7th Cir. 2011).

As we explain above, defendants do not show that plaintiff intentionally destroyed her sent emails in bad faith. Rather, while plaintiff breached her duty to preserve her sent emails – "albeit after [her] duty to preserve them arose" – she did not do so in bad faith. *See YCB*, 2012 WL 3069683, at *14. Thus, a spoliation instruction is not warranted here.

20

The Court recommends instead that at trial, the jury be instructed that plaintiff had a duty to preserve all documents and electronically stored information related to the claims, damages, and defenses in this litigation beginning in May 23, 2008; that, although she preserved some of this information, she did not preserve any emails that she sent from her email accounts before January 2012; and that, as a result, many of the emails plaintiff sent before January 2012 were available for defendants' review, except as part of email chains retained in messages in plaintiff's inbox. We recommend this instruction as "a measured and proportionate response to the conduct that occurred." *Danis*, 2000 WL 1694352, at *51. It would make clear to the jury that the responsibility for the absence of certain documents at trial rests not with defendants, but with plaintiff. *Id.*; *see also YCB*, 2012 WL 3069683, at *14.

## CONCLUSION

For the reasons discussed above, we respectfully recommend that the district judge grant in part and deny in part defendants' motion for sanctions, including dismissal (doc. # 155). We recommend that the district judge deny defendants' motion for the ultimate sanction of dismissal, but award defendants the other half of the fees and costs that they incurred in briefing the motion to compel we decided on January 17, 2012, and award them their entire fees and costs incurred in briefing the instant motion for sanctions. In addition, we recommend that the district judge instruct the jury on plaintiff's failure to preserve evidence as stated above.[9]

Specific written objections to this Report and Recommendation may be served and filed within fourteen (14) days from the date that this order is served. Fed. R. Civ. P. 72. Failure to file

---

[9]Plaintiff seeks an evidentiary hearing before sanctions are imposed. We do not believe such a hearing is necessary. This matter has been fully briefed, and the facts relied upon in this opinion (as opposed to the spin placed on them by the parties) are largely undisputed.

objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the Report and Recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir.1995).

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: November 8, 2012**

22